544 A.2d 1305

The COUNTY OF ALLEGHENY and the Prison Board of Allegheny County, and the City of Pittsburgh, a Municipal Corporation

v.

The COMMONWEALTH of Pennsylvania; the Commonwealth of Pennsylvania, Department of Corrections; David S. Owens, Jr. Commissioner Department of Corrections; and Erskind Deramus, Deputy Commissioner, Department of Corrections; and the Pennsylvania Board of Probation and Parole, Fred W. Jacobs, Chairman.

Appeal of The COUNTY OF ALLEGHENY and the Prison Board of Allegheny County, and the City of Pittsburgh, a Municipal Corporation.

Supreme Court of Pennsylvania.

Argued May 12, 1988.

Decided July 28, 1988.

James J. Dodaro, County Sol., George C. Diamantopulos, Asst. County Sol. Allegheny County Law Dept., Pittsburgh, for appellants.

Francis R. Filipi, Sr. Deputy Atty. Gen., for appellees.

Before NIX, C.J., and FLAHERTY, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is an appeal from an Order of the Commonwealth Court dated January 20, 1988 denying the motion of the County of Allegheny, the Prison Board of Allegheny County, and the City of Pittsburgh, Appellants, requesting preliminary mandatory injunctive relief requiring the Pennsyl-

vania Department of Corrections (Department) and the Pennsylvania Board of Probation and Parole (Board) to accept custody of state-sentenced inmates who were sentenced to serve terms of 11½ to 23 months from the County Jail to the State Correctional Institution at Mercer (Mercer). We hear this matter as a direct appeal pursuant to 42 Pa.C.S. § 723(a), 42 Pa.C.S. § 5105, and Pa. Rule of Appellate Procedure 311(a)(4). This appeal is just another part of ongoing litigation between the County and the State on the issue of who bears the primary responsibility for state prisoners. The issue before this Court is simply whether or not the Commonwealth Court erred in denying Appellants' motion for a preliminary mandatory injunction. For the reasons set forth herein, we conclude that there was no error committed by the Commonwealth Court in denying the injunction.

This action was initiated in the Commonwealth Court pursuant to a Petition for Review by the Appellants seeking relief in mandamus to compel the transfer of inmates from the Allegheny County Jail to State Correctional facilities to ease overcrowding at the County Jail, and in equity requesting that the Department be permanently enjoined from refusing to accept state-sentenced inmates from the County Jail for transfer to state facilities and seeking damages in the amount of $329,947.04 for maintenance of approximately eighty (80) inmates from July 1, 1986 through July 9, 1987, and requesting reimbursement of maintenance expenses on a continuing basis from July 9, 1987 forward. Section § 72[1] of the Code on Penal Institutions provides discretionary authority for the transfer of inmates from county to state facilities to alleviate overcrowded conditions upon a petition being presented to the Deputy Commissioner by an official in charge of a county institution, and an order for transfer being issued by the Commissioner with the consent of the Court of Common Pleas of the county wherein the institution is located. 61 P.S. § 72. The County had filed such petition requesting authorization to trans-

---

**1.** Section 1 of the Act of July 11, 1923, P.L. 1044, *as amended,* 61 P.S. § 72.

fer approximately eighty (80) inmates who were sentenced by common pleas judges to serve terms of 11½ to 23 months at Mercer. The Department refused to authorize the transfer and the County filed the petition for review.

An evidentiary hearing was held on December 3, 1987, after which the Honorable James Crumlish, Jr., President Judge, denied the injunction. The County appealed to this Court and, by order dated March 21, 1988, we remanded to the Commonwealth Court to conduct an evidentiary hearing and make findings of fact relating to the questions of the taxing authority of the County to raise revenue for the construction of prisons and the availability of current resources for this purpose. A hearing was held on April 26, 1988, before the Honorable Emil E. Narick, Senior Judge. All parties participated and were afforded full opportunity to be heard, to examine and cross-examine witnesses, and to introduce relevant evidence on the stated issues. Judge Narick made 57 specific findings on the issues of the County's taxing authority and present availability of funds. These findings are relevant to our determination of the issue before us, whether the injunction was properly denied.

Our scope of review on the grant or denial of a preliminary injunction is extremely narrow and the standard has often been reiterated by the Court as follows:

> ... on an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were *any apparently reasonable grounds* for the action of the court below. Only if it is plain that *no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied* will we interfere with the decision of the Chancellor. *Intraworld Inc. v. Girard Trust Bank*, 461 Pa. 343, 336 A.2d 316 (1975); *Credit Alliance Corp. v. Philadelphia Minit–Man Car Wash Corp.*, 450 Pa. 367, 301 A.2d 816 (1973); *Zebra v. Pittsburgh School District*, 449 Pa. 432, 296 A.2d 748 (1972). "In order to sustain a preliminary injunction, *the plaintiff's right to relief must be clear, the need for relief must be immediate, and the injury*

*must be irreparable if the injunction is not granted."*
*Zebra v. Pittsburgh School District,* 449 Pa. at 437, 296
A.2d at 750. (emphasis added). *Roberts v. School District of Scranton,* 462 Pa. 464, 469, 341 A.2d 475, 478
(1975). (emphasis added). *Bell v. Thornburgh,* 491 Pa.
263, 267–68, 420 A.2d 443, 445 (1980). (emphasis added).
*Singzon v. Commonwealth, Department of Public Welfare,* 496 Pa. 8, 10–11, 436 A.2d 125, 126–27 (1981). For a
preliminary injunction to issue, every one of these prerequisites must be established; if the petitioner fails to establish
any one of them, there is no need to address the others. *Id.*
496 Pa. at 14, 436 A.2d at 128.

Similarly, "[m]andamus is an extraordinary remedy designed to compel official performance of a ministerial act or
mandatory duty where there exists a clear legal right in the
plaintiff, a corresponding duty in the defendant and want of
any other adequate remedy at law." (citations omitted).
*County of Allegheny v. Commonwealth of Pennsylvania,*
*(Allegheny County I),* 507 Pa. 360, 372–73, 490 A.2d 402,
408 (1985). "Where the action sought to be compelled is
discretionary, mandamus will not lie to control that discretionary act, . . . but courts will review the exercise of the
actor's discretion where it is arbitrary or fraudulently exercised or is based upon a mistaken view of the law." (citations omitted). *Id.* 507 Pa. at 375, 490 A.2d at 409.

■ In *Allegheny County I,* we held that the Department
must accept and confine all persons committed to its custody pursuant to 42 Pa.C.S. § 9762(1) and (2) of the Judicial
Code.[2] We so held because under subsection (1), which
encompasses persons receiving a maximum sentence of five
years or more, such persons are committed to the custody
of the Department. In these cases, there is no discretion to
be exercised by the Department; rather, the legislature has
directed where custody is to be vested and the Department
has no choice but to provide placement in one of its facilities

2.    § 9762.  **Sentencing proceeding; place of confinement**
All persons sentenced to total or partial confinement for:
    (1) maximum terms of five or more years shall be committed to
the Bureau of Corrections for confinement;

for confinement. 507 Pa. at 379, 490 A.2d at 412. Under subsection (2), the responsibility for custody of prisoners who receive a maximum sentence of two years or more, but less than five years, is vested in the sentencing court and not the Department. So again, there is no discretion vested in the Department as to the assignment of custody for confinement. 507 Pa. at 379–80, 490 A.2d at 412. Since we concluded that the role of the Department under § 9762 (1) and (2) was a ministerial one, it was, therefore, an appropriate subject for an action in mandamus if the Department refused upon direction to perform that function. *Id.*

■ The prisoners in the instant case, however, have terms of incarceration of less than two years and the responsibility for custody of such prisoners is provided by § 9762(3):

> (3) maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court except that as facilities become available on dates and in areas designated by the Governor in proclamations declaring the availability of State correctional facilities, such persons may be committed to the Bureau of Corrections for confinement.

In *Allegheny County I*, we distinguished this subsection by stating that "Section 9762(3) in contrast to the earlier subsections does provide discretion to the [Department] in the placement decision. ... Section 9762(3) refers to an initial commitment to a county prison although the prisoner may subsequently be transferred to a State facility." 507 Pa. at 380, n. 7, 490 A.2d at 412, n. 7. We also stated in *Allegheny County I* that 61 P.S. § 72 clearly vests discretion in the Deputy Commissioner to determine whether the requested transfers should be approved. 507 Pa. 375, 490 A.2d 410. Under § 9762(3), the inmates at issue are properly in the County's custody, unless a Governor's proclamation makes available State facilities. In 1986, Mercer was

(2) maximum terms of two years or more but less than five years may be committed to the Bureau of Corrections for confinement or may be committed to a county prison within the jurisdiction of the court; ...

made available to Allegheny County inmates. However, the Mercer facility has been at full capacity since October, 1986 and the Deputy Commissioner has exercised his discretionary authority to suspend transfers since that time. Upon our review of the record, we are convinced that Appellants have not established any clear legal right to compel the Department to accept the transfer of these inmates from the County Jail to a State facility. Nor have Appellants established a corresponding duty on the part of the Department to be responsible for such inmates. Mandamus does not lie under the situation presented here, therefore, there was no abuse of discretion by Commonwealth Court in denying mandamus.

The proponent of a preliminary injunction faces a heavy burden of persuasion especially where, as here, the trial court has not been persuaded and has denied the injunction request. The proponent must also overcome the narrow scope of appellate review which will uphold that denial if there was "any apparently reasonable grounds." *Singzon v. Comm., Dept. of Public Welfare, supra,* 496 Pa. at 12, 436 A.2d at 127. The Commonwealth Court based its denial of injunctive relief on several grounds. The Chancellor found that a crisis situation exists in both the County Jail and the State facilities. However, absent a finding that the Deputy Commissioner abused his discretion, a common pleas court judge cannot override the sentencing location strictures mandated in § 9762(3). The Court also found that the County's right to relief was not clear and that the County failed to support its contention that adequate facilities are available at Mercer, or that irreparable harm is imminent.

In *Allegheny County I,* we determined that the Commonwealth bears primary responsibility for maintaining order and preserving the safety and welfare of all citizens. In this regard, we stated:

> Proceeding from the premise that the State bears the primary responsibility and that the State must provide the political subdivision with the taxing power necessary to discharge its statutorily delegated duty to provide

detention facilities, the exercise of the discretion of a state official in refusing a request to provide alternative custodial facilities must be measured against the adequacy of the resources made available to the political subdivision to meet this demand.

... [W]here the political subdivision can demonstrate that its resources for these purposes are clearly inadequate, it is the responsibility of the State to either provide additional facilities or to allocate to the political subdivision reasonable funds to discharge its delegated responsibility. (citations omitted).

507 Pa. 377–78, 490 A.2d at 411.

The County has alleged that it has inadequate resources to meet this delegated responsibility. The question is whether this is due to inadequate resources being made available to the County by the Commonwealth. We remanded this case for an evidentiary hearing for the purpose of determining whether the State has made available adequate resources for the County to discharge this delegated duty.

■ The findings of Judge Narick reveal that the County's source of taxation is on real and personal property. The maximum tax that the County is permitted to assess for general county purposes in any one year beginning with fiscal year 1988 is twenty-five (25) mills on every dollar of valuation of real property. The County also has unlimited authority to levy taxes to pay for debt service. (Opinion of Judge Narick, p. 1307). It is clear that for the past four years the County has not taxed its citizens anywhere near the maximum rate permitted by statute. Indeed, after filing this lawsuit and motion for preliminary injunction, the County set the millage for the 1988 fiscal year for general county purposes on real estate at 1⅛th mills *less* than the preceding year. Millage rates on the assessed valuation of real property in 1988 have been assessed at 25% of the fair market value of the property. However, the maximum millage may be assessed at 100% of assessed fair market value and the Allegheny County Board of Property Assessment, Appeals and Review has the power to increase the

assessment ratio of taxable real property. (Opinion at pp. 559–562). As the Appellees point out, this is not a case of the Commonwealth not providing the political subdivision with sufficient taxing power, rather, it is a case of the County electing not to use that power and instead seeking, in effect, a change in legislation through the equitable powers of the courts. This we cannot permit. Since the County has not, on this record, established a clear right to relief, we need not address the other pre-requisites for a preliminary injunction. The resources made available to the County are embodied in the taxing power delegated to the County by the Legislature. The County has available taxing authority which is not being used, and there is ample evidence in the record to support the Chancellor's conclusion that the County is not suffering immediate irreparable harm.

Accordingly, the Commonwealth Court's order denying injunctive relief is affirmed.

LARSEN, McDERMOTT and ZAPPALA, JJ., did not participate in the consideration or decision of this case.