J-S05024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHAEL CIPOLLONE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TARA MUELLER AND JOHN DOE A.K.A. | : | No. 847 WDA 2022 |
| TATTOOPROTECTION_NY | : | |

Appeal from the Order Entered June 23, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-22-006209

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY LAZARUS, J.:                **FILED:  May 23, 2023**

Michael Cipollone appeals from the order, entered in the Court of Common Pleas of  Allegheny County, denying his motion for a preliminary injunction[1] against Tara Mueller (Mueller) and John Doe (Doe), a/k/a TattooProtection_NY (collectively, Appellees).[2]  After our review,  we affirm.

On April 24, 2022, at the Roc City Tattoo Expo in Rochester, New York, Cipollone, a professional tattoo artist, was approached by Mueller and her friend to provide them with tattoos.  Cipollone's cell phone was not working properly to create a stencil, and so he used Mueller's cell phone to create the stencil.  Cipollone took Mueller's phone to a back room to print the stencil but

_____

[1] **See** Pa.R.A.P. 311(a)(4) ("An appeal may be taken as of right . . . from . . . [a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction[.]").

[2] Appellees have not filed briefs in this matter.

he was unable to print it. Ultimately, Cipollone did a freehand-sketched tattoo on Mueller. Later that day, Cipollone emailed Mueller a picture he had taken of the completed tattoo, and Mueller responded to the email, thanking him.

The next day, Mueller emailed Cipollone, accusing him of going into her iCloud account through her cell phone, taking private, sexually explicit videos from her phone, and sending them to his own phone. She informed him that his cell phone number was the number that appeared on her MacBook, indicating that photos or videos had been sent from her phone to that phone number. *See* Mueller Affidavit, 6/10/22. Mueller also contacted Doe, who operates the Instagram account, @tattooprotection-ny, about this incident, and, on May 17, 2022, Doe posted Mueller's story to the @tattooprotection-ny Instagram account.

Cipollone avers that as a result of the post, he was fired from his place of employment (In the Blood Tattoo, located in the City of Pittsburgh), where he had worked for seventeen years. He also avers that multiple re-posts have occurred, naming Cipollone as a sexual predator.

On May 31, 2022, Cipollone filed a complaint sounding in defamation and an emergency motion for a preliminary injunction, seeking an order requiring that Doe remove certain posts on the Instagram page and restricting both Doe and Mueller from publishing defamatory speech about Cipollone. In his motion, Cipollone claimed he has suffered irreparable harm to both his personal and professional reputation. Mueller filed an answer, new matter, and a counterclaim for conversion.

On June 13, 2022, the court held a hearing on Cipollone's motion. The court heard testimony from Cipollone and reviewed both parties' exhibits, including Mueller's affidavit. *See* N.T. Preliminary Injunction Hearing, 6/13/22, at 14-48. On June 23, 2022, the court entered an order denying the motion. Cipollone filed this timely appeal and raises the following issues for our review:

> I. Whether the trial court abused its discretion when it denied [Cipollone's] motion for preliminary injunctive relief?
>
>> A. Did [Cipollone] experience immediate and irreparable harm that damages cannot adequately compensate?
>>
>> B. Did [Cipollone] show that greater injury would result from refusing an injunction than from granting it?
>>
>> C. Did [Cipollone] prove that a preliminary injunction would properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct?
>>
>> D. Did [Cipollone] show that he is likely to prevail on the merits of his case?
>>
>> E. Did [Cipollone] show that the injunction he sought is reasonably suited to abate the offending activity?
>>
>> F. Did [Cipollone] present evidence that a preliminary injunction would not adversely affect the public interest?

Appellant's Brief, at 5.

When reviewing an order granting or denying a preliminary injunction, our review is "highly deferential" and limited to whether there was an abuse of discretion. ***Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.***, 828 A.2d 995, 1000 (Pa. 2003). "[W]e do not inquire into the merits of the controversy, but only examine the record to determine if there were any

apparently reasonable grounds for the action of the [trial] court." *Id.* (citation omitted). A trial court has "apparently reasonable grounds" when it has found that one of the prerequisites for a preliminary injunction has not been met. *Warehime v. Warehime*, 860 A.2d 41, 46 (Pa. 2004).

> To be entitled to a preliminary injunction, a party must show the following: First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking the injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Kuhstoss v. Steele*, 234 A.3d 789, 792–93 (Pa. Super. 2020) (citation omitted) (emphasis added). *See County of Allegheny v. Commonwealth*, 544 A.2d 1305, 1307-08 (Pa. 1988) (for preliminary injunction to issue, every prerequisite must be established; proponent of preliminary injunction faces heavy burden of persuasion).

> The purposes of a preliminary injunction are to preserve the status quo and prevent imminent and irreparable harm which might occur before the merits of the case can be heard and determined. It is considered an extraordinary remedy and may only be granted if the plaintiff has established a clear right to the relief sought.

***Soja v. Factoryville Sportsmen's Club***, 522 A.2d 1129, 1131 (Pa. Super. 1987) (citations omitted).

After our review of the record, and in light of our highly deferential standard of review, we conclude there are "apparently reasonable grounds" for the trial court's action. ***Summit Towne Centre***, ***supra.*** The trial court made express findings related to the six prerequisites for a preliminary injunction. The court found Cipollone failed to establish that a preliminary injunction is necessary to prevent immediate and irreparable harm. In his motion, Cipollone alleges that Mueller made defamatory statements that led to his loss of employment and damage to his reputation. ***See*** Emergency Motion for Preliminary Injunctive Relief, 5/31/22, at ¶¶ 4, 17-18. However, as the court observed, the damage has already been done. Cipollone has lost his job, and, thus, has failed to prove that an injunction is necessary to prevent immediate and irreparable harm that damages cannot adequately compensate. ***See Constantakis v. Bryan Advisory Services, LLC***, 275 A.3d 998, 1016, 1017 (Pa. Super. 2022) (purposes of preliminary injunction are to preserve the status quo and prevent imminent and irreparable harm that might occur before merits of case can be heard and determined). Moreover, at the hearing, Cipollone failed to present evidence or testimony to support the argument that he had become unemployable, such that injunctive relief was necessary to prevent immediate and irreparable harm. Finally, damage to reputation is compensable at law with money damages. ***See Joseph v. Scranton Times, L.P.***, 129 A.3d 404, 426 (Pa. 2015).

Furthermore, although Cipollone was not required to prove his underlying claim, he had to show his "right to relief is clear" and that he was "likely to prevail on the merits[.]" **Warehime**, 850 A.2d at 47. Here, the court found that Cipollone failed to establish that he was likely to succeed on the merits. Mueller's affidavit and attached exhibits showed that at the time Cipollone had access to Mueller's phone, private videos were sent from Mueller's phone to Cipollone's phone. **See** N.T., Preliminary Injunction Hearing, **supra** at 29, 36, 41, 50-51. The court found that evidence credible. Cipollone testified that he did not send anything from Mueller's phone to his phone, but, as the court noted, no evidence was submitted that refuted Mueller's evidence. We agree with the trial court that this falls short of demonstrating Cipollone's clear right to relief.

Our review of the record reveals "apparently reasonable grounds" for the trial court's ruling. **See SEIU Healthcare Pennsylvania v. Commonwealth**, 104 A.3d 495, 501 (Pa. 2014). Accordingly, we find that the trial court acted within its discretion when it denied Cipollone's application for a preliminary injunction. **Kuhstoss**, **supra**.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/23/2023</u>